**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
MITCHELL H. COHEN U.S. COURTHOUSE
401 Market Street
P.O. BOX 2067
CAMDEN, NJ 08101-2067

Andrew B. Altenburg, Jr.                                                                                               (856) 361-2320
U.S. BANKRUPTCY JUDGE

April 21, 2015

Mr. Thomas E. Dowey, Esquire                    Mr. Robert H. Johnson, Esquire
Law Office of Thomas Dowey                      Robert H. Johnson LLC
1423 Tilton Road, Suite 8                       1818 Old Cuthbert Road, Suite 107
Northfield, NJ 08225                            Cherry Hill, NJ 08034

    RE:    In re Crane
             Bankr. Case No. 14-30248-ABA

Dear Messrs. Dowey and Johnson:

      This matter was originally brought before the court by oral argument on February 17, 2015 on the Debtor Glen B. Crane's (the "Debtor") Objection to Paulette Crane's Proof of Claim (the "Objection"). Doc. No. 13 on the Court's Docket. After the hearing, the parties were instructed to submit further pleadings in support of their positions. As I write for the benefit of the parties only, the court will not reiterate the facts or history of this case except as necessary to explain its decision. The court has reviewed the submissions of the parties and the following constitutes its findings of facts and conclusions of law.

### The State Court Order

      The court begins with a discussion of the September 2014 order (the "State Court Order") from the Circuit Court for the Eighteenth Judicial Circuit in and for Seminole County, Florida (the "State Court"). *See* Doc. No. 13-3 on the Court's Docket at 5-6. The State Court Order clearly indicates that the Debtor "is current in his alimony obligation through July 31, 2014" and that "the Court finds that no alimony arrearage exists." *Id.* The court is bound by the State Court's finding that the debt in question was not alimony by virtue of the principle collateral estoppel which "prevents parties from relitigating an issue that has already been litigated." *Peloro v. U.S.*, 488 F.3d 163, 174-75 (3d Cir. 2007) ("The prerequisites for the application of issue preclusion are satisfied when: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment.") (internal marks and citations omitted).

      In spite of the clear language of the State Court Order that indicates that the Debtor does not owe his ex-wife Paulette Crane any alimony, the State Court Order clearly establishes that the Debtor owes Paulette Crane $54,842.16 for arrearages for health insurance premiums

("Insurance Premiums"). Doc. No. 13-3 on the Court's Docket at 5-6. The court is once again bound by the State Court's finding by virtue of the principle of collateral estoppel. The Debtor thus owes Paulette Crane $54,842.16 for the Insurance Premiums fixed by virtue of the State Court Order. The question that remains is: are the Insurance Premiums dischargeable? Before answering the question, the court must explore the pertinent evidence submitted by the parties.

### The Property Settlement Agreement

As the Debtor correctly points out, the original Property Settlement Agreement, Doc. No. 13-4 on the Court's Docket ("PSA"), required the Debtor to keep Paulette Crane on his employer provided health insurance. *Id.* at 3. The PSA, in the paragraph following this requirement, states:

> Major medical insurance is a ***prime consideration*** of the parties, ***especially for the benefit of the Wife*** and that major medical insurance may be subject of a modification proceeding upon the showing of a change of circumstance.

*Id.* (emphasis added). Additionally, the next Section of the PSA addresses "Life Insurance" and states that:

> The Husband agrees to borrow against the whole life insurance policy up to the amounts available, for any uncovered medical expenses of the Wife, not covered by the Husband's major medical plan through his employment.

*Id.* pp. 3-4.

The PSA was ratified and confirmed by Order of the court on April 15, 1991. *See* Doc. No. 13-5 on the Court's Docket ("PSA Order"). After the Debtor lost his job he agreed to reimburse Paulette Crane in the amount of $190.00 per month toward Cobra payments. *See* Objection, ¶2. This PSA modification was ratified and confirmed on May 7, 1997. *See* Doc. No. 21-4 on the Court's Docket ("PSA Modification"). Under the PSA Modification, the $190 payments were to continue until Paulette Crane "qualif[ied] for Social Security Medicaid." The PSA Modification went on to state that "[i]f the former wife cannot qualify for Social Security Medicaid, the $190.00 shall continue henceforth." *Id.*

The Debtor contends that the court must look at the original intent of the State Court when ordering payment and that the original intent was that the Debtor share his employment benefits package separate from the alimony payments as part of their equitable distribution. *See* Objection, ¶2. In support of his argument, the Debtor notes, *inter alia*, that when he tried to make the $190.00 payment to the clerk of the State Court, the payment was returned because it was not part of the alimony award. *See* Doc. No. 13-6 on the Court's Docket. The Debtor argues that this is further evidence that the debt in question is not part of the support package but was originally intended as part of the Debtor's benefit package, a property settlement, an unsecured non-priority debt.[1] *See* Objection, ¶2. Finally, the Debtor argues that since Paulette Crane now lives in a

---

[1] The court is not persuaded by the Debtor's argument that a rejection of the payments by the State Court Clerk's Office because they were not the nature of alimony evidences that they dischargeable. No court made that

Medicaid nursing home, she has waived or transferred her rights to receive payment. *See* Objection, ¶3. Paulette Crane obviously disputes these arguments.

## CONCLUSIONS OF LAW

The 2005 BAPCPA Amendments changed the standard to determine the dischargeability of obligations to former spouses such that a distinction is no longer drawn between alimony and equitable distribution of property. *In re Ruitenberg*, 745 F.3d 647, 649 (3d Cir. 2014). The post-BAPCPA standard asks the court to inquire whether a domestic support obligation exists and broadly defines a domestic support obligation as follows:

> (14A) The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
> (A) owed to or recoverable by—
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
> (i) a separation agreement, divorce decree, or property settlement agreement;
> (ii) an order of a court of record; or
> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A) (West).

BAPCPA did not change the standard for determining whether an obligation is in the nature of alimony, support, or maintenance. *In re Ludwig*, 502 B.R. 466, 468, n.1 (Bankr. W.D. Va. 2013); *In re Anthony*, 453 B.R. 782, 786 (Bankr. D.N.J. 2011). Furthermore, as the Third Circuit explained in *In re Gianakas*, 917 F.2d 759 (3d Cir. 1990), a debt can be "in the nature of

---

determination and even if the court accepts that the State Court Clerk's designation of the payments as something other than alimony is correct, this not indicative of what the nature of those payments actually were.

support under section 523(a)(5) even though it would not legally qualify as alimony or support under state law." *Id.* at 762 (citations omitted). "Whether [an] obligation is in the nature of alimony, maintenance or support for the purposes of the Bankruptcy Code is a question of federal, not state, law." *Id.*

It cannot be disputed that a debt of $54,842.16 for the Insurance Premiums accrued before the date of the order for relief in this case and is owed to the former spouse Paulette Crane pursuant to the PSA, PSA Order, PSA Modification and State Court Order. The debt is not assigned to a nongovernmental entity. Therefore, the only element that remains to be satisfied under 11 U.S.C. § 101(14A) is whether the Insurance Premiums are in the nature of alimony, maintenance, or support of Paulette Crane without regard to whether such debt is expressly so designated. Although the State Court Order precludes a finding that the $54,842.16 debt the Debtor owes Paulette Crane is alimony *per se*, it is still possible that the debt falls under the broader definition of a domestic support obligation as defined in Section 101(14A).

Both parties compel the court to look to the PSA, PSA Order, PSA Modification and State Court Order to make its determination of intent as to what the nature of the Insurance Premiums was. Neither party submits any further evidence to assist the court in its determination. Therefore, the court looks only to the PSA, PSA Order, PSA Modification and State Court Order. *In re Davison*, No. 14-31761-DHW, 2014 WL 6674770, at *3 (Bankr. M.D. Ala. Nov. 24, 2014) ("In these matters, as no testimony was offered, the court will determine the intent of the parties based upon the divorce documents and the court orders that were submitted."). *See also JP Morgan Chase Bank, N.A. v. Safeco Ins. Co. of Am.*, No. 02-16014, 2012 WL 1945511, at *2 (N.D. Ohio May 30, 2012) (determining intent to effect a novation by examining transaction documents and stating no jury trial was needed on the issue).

The PSA clearly provides that major medical insurance is a ***prime consideration*** of the parties, ***especially for the benefit of the Wife***. Additionally, the PSA contemplates that Debtor will borrow against his whole life insurance policy up to the amounts available, for any uncovered medical expenses not covered by the major medical plan.[2] The PSA Modification provided for the continuation of payments and these payments were to continue indefinitely absent some event provided for under the documents.[3] The court finds the express language the parties utilized in the PSA that major medical insurance was the prime consideration of the parties **ESPECIALLY** for the benefit of Paulette Crane compelling. "As a general matter,

---

[2] Although the State Court Order makes it clear that the $54,842.16 debt cannot be referred to as alimony, and although the language of the PSA states that "[t]he clause headings appearing in this agreement have been inserted for the purpose of convenience and ready reference. They do not purport to, and shall not be deemed to bind, limit or extend the scope or intent of the clauses to which they have been appertained," the court finds it telling that the medical insurance provision in the PSA is located under a subsection entitled "Alimony." PSA at 2-3, 7-8. More specifically, the court finds it instructive that the medical insurance provision was included alongside what were clearly intended to be alimony provisions and was not treated separately.

[3] The court finds the language of the PSA Modification instructive in that the Debtor's agreement to pay Paulette Crane's ongoing health care appears to be in the nature of support. The language makes it clear that the Debtor will have an ongoing obligation to provide for medical expenses in the form of health insurance until she becomes eligible for Medicaid in June, 1998, at which time the payment shall stop unless the former wife cannot qualify for Medicaid and, in that event, the payments would continue henceforth.

medical expenses are in the nature of support." *In re Seibert*, 914 F.2d 102, 105 (7th Cir. 1990); *see In re Moeder*, 220 B.R. 52 (B.A.P. 8th Cir. 1998) (child's medical and psychologist expenses nondischargeable); *In re McLain*, 241 B.R. 415 (B.A.P. 8th Cir. 1999) (health insurance premiums and medical expenses of children nondischargeable); *In re Marquis*, 203 B.R. 844 (Bankr. D. Me. 1997) (medical and counseling expenses of former spouse nondischargeable); *Matter of Olson*, 200 B.R. 40 (Bankr. D. Neb. 1996) (past and future medical expenses, which stemmed from debtor's alleged physical abuse of ex-wife, nondischargeable); *In re Azia*, 159 B.R. 71 (Bankr. D. Mass. 1993) (obligation to pay medical and dental expenses was nondischargeable even though payment was made to third party; dependents received benefit so there was no assignment); *In re Northcutt*, 158 B.R. 658 (Bankr. N.D. Ohio 1993) (health insurance premiums). The State Court Order provides that the Debtor owes Paulette Crane a debt of $54,842.16 for the Insurance Premiums. On its most basic level, this debt falls under the umbrella of medical expenses and as such is in the nature of support.

In light of the express language of the documents submitted, the court is hard-pressed to come to any conclusion other than the Insurance Premiums are the nature of support and therefore fall squarely within the definition of a domestic support obligation as defined by 11 U.S.C. § 101(14A). To that end, by virtue of the fact that the $54,842.16 debt constitutes a domestic support obligation, such debt is nondischargeable under 11 U.S.C. § 523(a)(5) and entitled to priority status in this chapter 13 case under 11 U.S.C. § 507(a)(1)(A).

### Attorney's Fees

As for Paulette Crane's claim for attorney's fees, the court is once again constrained by the State Court Order. The State Court Order undoubtedly fixes a debt owed to Paulette Crane in the amount of $54,842.16 for arrearages for the Insurance Premiums, but it does not fix an amount for attorney's fees and specifically states that it "reserves jurisdiction for a subsequent hearing on the requests for attorney's fees and costs related to this matter" and that it "retains jurisdiction to enter any such order and further Orders [sic] or relief as may be necessary, appropriate or just." State Court Order at 6. Since attorney's fees were not assessed at the state court level and since Paulette Crane has cited no law demonstrating her entitlement to same, the court hereby permissively abstains from deciding that issue. The parties remain free to return to state court to litigate the issue of attorney's fees. *See In re Gianakas*, 917 F.2d 759.

### Bad Faith Filing

Based on the court's ruling above, there is no need to address the bad faith argument. Nevertheless, Paulette Crane's argument that the Debtor's Objection should be overruled on the grounds the Debtor's bankruptcy case was filed in bad faith is misplaced as a bad faith filing is not grounds to deny an objection to a proof of claim. The court will therefore decline to further address this argument.

## CONCLUSION

For the reasons set forth above, the Debtor's Objection is **SUSTAINED IN PART AND OVERRULED IN PART**. Claim 1-2 will be amended to reflect a $54,842.16 domestic support obligation entitled to priority status and a $0.00 claim for attorney's fees.

The court reserves the right to further supplement its findings of fact and conclusions of law.

A conformed copy of an Order is attached.

_____
Andrew B. Altenburg, Jr.
United States Bankruptcy Judge